[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 556 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 557 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 558 
The agreement executed by Hubbell on the 25th of September, authorized Miller to extinguish the lien upon the premises, for the purchase money, by the payment of the amount bid, at the end of three years, with annual interest, at the rate of seven per cent; and the judgment debtor was concluded by his acceptance of the covenants, from claiming or exercising the right of payment or redemption, before that period. The language of the instrument is, that "in case said Miller should at the expiration of the term last aforesaid, pay to Hubbell or his representative the amount of the bid," c. In a word, the amount of the purchase money paid at the sale was converted into an investment for three years, with annual interest, irredeemable by the debtor until the expiration of that period. These, it is hardly necessary to say, were not the rights secured to the judgment debtor by the statute; nor was this the interest in the land acquired by the purchaser, by virtue of the sale made by the sheriff. (2 R.S. 371, §§ 45, 51.) But the latter is the only interest which the legislature have authorized a junior judgment creditor to demand or acquire. The act provides that if the persons entitled to redeem within the year, shall omit so to do, "then the interest
vested in the purchaser by such sale, may be acquired by any creditor whose judgment is a lien upon the land, within three months thereafter." (2 R.S. 372, § 50.) The statute has no application where the interest vested by the sale is changed, by an agreement between the purchaser and owner of the fee. The creditor is in such case left to his common law remedy, by sale or redemption, if the substituted interest is redeemable.
It was said that "this agreement neither extinguished the lien acquired by the sale, nor altered the nature of it." When it can be shown that an interest in land, defeasible upon the payment of a sum of money, with ten per cent interest, at any time within the year, is the same with one defeasible on the *Page 559 
payment of the same sum, at the expiration of three years, with annual interest at seven per cent, I shall assent to the proposition. It is true, they are both liens to secure the payment of money; but for different sums and for different periods. They are not liens of the same nature; for one depends upon the statute the other on contract. If the certificate of sale had been altered so as to conform to the agreement of the 25th of September, it would have been utterly void as a statute security. If the parties had indorsed upon the instrument thus changed, an express agreement, that the sheriff should convey according to its terms; they could not enlarge the official obligations of the officer by this stipulation, or bind him to convey the land, at the end of three, any more than after a lapse of twenty years, or within six months of the sale. (2 R.S. 374, §§ 62, 63.) If the sheriff, in either case, voluntarily executed a deed, he would act as the agent of the parties, and its validity would rest exclusively upon their agreement. If he refused, the lien could only be enforced in equity. The relief, therefore, sought by the complainant involves the determination of two questions: 1st. Was the agreement of the 25th of September valid, between the parties? and if so, was it obligatory upon creditors of Miller having notice of the contract, who subsequently acquired liens by judgment upon the premises? The first proposition was affirmed by the supreme court in their decision, admitted by the counsel of the defendants; and will, it is presumed, be denied by no one. If true, it will be found in this case decisive of the second question above suggested. The general rule, undoubtedly is, that any person may for a valuable consideration, in good faith, dispose of any right or interest in, or pertaining to his real estate, at pleasure; and that his contracts will bind all his creditors, existing or subsequent, who have not obtained liens upon the property. They claim through the debtor, and of course subject to his bona fide contracts. The principle is sufficiently obvious without an authority, but it was distinctly affirmed by this court in Candee v. Lord, (2Comst. 269; Cowen Hill's Notes, 1436.) The honesty of the agreement under consideration is not controverted by the defendants. Indeed, there were *Page 560 
no creditors to be defrauded by judgment or otherwise, when it was made.
If then Perrin, who became a creditor of the complainant and obtained a lien subsequent to this arrangement, is not concluded by it, it must be because the statute confers upon him the right to acquire the interest sold by the sheriff, irrespective of any arrangement between the purchaser and the owner of the premises. The statute to which we are referred, contains no prohibition against any bona fide contract between the purchaser and the debtor, in relation to their respective interests in the property sold; nor does it expressly, or by implication, confer upon the redeeming creditor the right to overreach and annul a contract, valid between the parties, and to acquire an interest which neither the debtor nor the original purchaser possessed, when the judgment became a lien.
In Ex parte Peru Iron Co. (7 Cowen, 540,) it was said that "one having purchased land at a sheriff's sale, acquired a mere lien, which he might discharge or release without the consent
of a junior judgment creditor." And in the Bank of Vergennes v.Warren, that "the original purchaser may part with his interest in the land upon such terms as he deems proper." (7 Hill, 93.) Now every change of the lien of a purchaser is a relinquishment of the original interest conferred by the sale, to the extent of the change. According to the authorities, he may release all
his interest and thus defeat a redemption by a judgment creditor. I see no reason why he may not substantially modify it by contract with the debtor, although the same consequence ensues.
Again, the right of redemption insisted upon by the defendants is irreconcilable with the language and spirit of the statute. The law confers the privilege of "acquiring the interest vested in the purchaser by such sale," upon "creditors having judgments that are a lien upon the premises sold." (§§ 50, 51, 55,supra.) The right is stricti juris. (20 Wend. 538, 561.) The continuance of the interest vested by the sale is pre-supposed, and is just as indispensable to the exercise of the right as the lien of the judgment. They must co-exist. But so long as the interest obtained by Hubbell by the sheriff's sale *Page 561 substituted, there was neither creditor nor judgment. And when there was a judgment creditor and lien, the interest had ceased. (§ 59, last clause.)
"The object of our statutes," as remarked judges of our courts, "was to prevent the sacrifice of the debtor's property and to make the land bring its utmost value, by means of an auction among creditors. (7 Cowen, 343; 4 Denio, 144.) But according to its provisions the auction can not commence until the debtor's rights are foreclosed. (§§ 50, 56.) When he suffers the period allotted to him exclusively for redemption, to expire, and thus demonstrates his inability to preserve the property forhimself, creditors may consider it as offered by law to the highest bidder. Here, however, the debtor by contract secured the land to his own use for three years, with the right then to extinguish the only lien upon it. The arrangement left the residue of his real estate unincumbered, and subjected this part of it to the claims of his creditors, fifteen months beyond the period limited by statute.
This contract, we are informed, although obligatory upon the parties, can not affect any redeeming creditor; that the statute provision, "that he may acquire all the rights of the original purchaser," gives him a vested right to pay a debt which the purchaser could not exact from the debtor, and to acquire an interest in land which the former had relinquished for a valuable consideration. We do not so construe the law. We see nothing in its provisions to revive an interest that has once been extinguished by the act of the purchaser. It follows that Hubbell, from the 25th of September, when his covenant was executed and delivered, had no interest in the premises which could be acquired by statute redemption.
What has been suggested renders it unnecessary to determine whether Perrin was estopped, by the agreement of the 25th of September, from redeeming. He was not a party to the covenant executed by Hubbell, but it would not be difficult to prove that he was a party to the agreement; of which that covenant was a part execution. The proposition of the complainant to purchase the moiety of the premises owned by Perrin, Burns and *Page 562 
Hubbell, including the stipulation subsequently given by the latter. The sale was made, and the mortgage given and accepted in pursuance of that proposition. After participating in the advantages of the sale and soliciting the execution of the covenant by which Miller precluded himself from redeeming under the statute, it would seem that Perrin was not at liberty to invalidate the contract as judgment creditor, and by the same act deprive his vendee of his property, and his co-vendors of their security.
If Perrin could not redeem, the only remaining question is, whether Lewis, as his assignee, was in any better condition. It is unnecessary to inquire, whether he was bound by the equities affecting the assignor; for the case shows that he was assignee in form only. Perrin deposes "that he found obstacles in the way of redeeming in his own name." And this is the only satisfactory reason, to be gathered from the evidence, for the assignment. Lewis had express notice of the agreement of Hubbell, which was attached to the certificate, and placed in his hands by the sheriff. In addition it is shown, that a few days before the expiration of the fifteen months, the necessary papers for the redemption were prepared by the procurement of Perrin, by his counsel; that he subsequently requested Lewis to purchase the judgment; that on the day of the redemption, Lewis, who resided in the country, met him by arrangement; that the assignment was executed, and the money paid at the office of the same counsel; that on that day Perrin drew $400 from the bank, and he testifies "that he might have lent Lewis his check." These facts strongly indicate that the assignment was for his benefit. But there is another which is decisive. He was a man of wealth, his judgment was secure beyond a contingency, and he himself was one of the mortgagees of the premises to be redeemed. Under these circumstances, he solicits Lewis, "with whom he was on intimate and confidential terms," to purchase the judgment; stands by when the redeeming papers were prepared; which the moment they were used, would in all probability ruin Miller, and take from himself, and his associates, real estate valued at nine thousand dollars, upon *Page 563 
which their respective mortgages were liens. It is impossible to doubt the real object of the transaction. It is not to be presumed that he would aid in the consummation of a project, which the public might deem oppressive, and his co-mortgagees dishonorable, gratuitously; certainly not at a serious and known sacrifice of his own interest.
We think the necessary conclusion is, that Lewis was a mere trustee for Perrin, standing in his place, and succeeding to his rights, as against the complainant. That consequently the redemption attempted by him was inoperative and void, for the reasons suggested. The decree of the supreme court must be reversed.