### HAM *versus* SAWYER.

By c. 124, § 8, of Acts of 1821, and c. 5, § 24, of R. S., the bounds of townships were to remain as before granted, settled and established.

The boundaries of towns are created, and may be changed by Legislative enactments, but no corporate acts by the inhabitants thereof can alter them.

No *prescriptive* rights can be claimed *against* existing statutes.

The exercise of municipal authority by one town over a portion of the territory of another, and the acquiescence of the latter for a period of more than twenty years, will not authorize the former to levy and collect taxes upon persons dwelling in *such territory.*

All that part of the town of Monmouth which was excluded therefrom by the new western boundary established by the Act of March 3, 1809, was included in, and became a part of the town of Leeds.

Of the damages in an action of trespass.

ON REPORT from *Nisi Prius*, RICE, J., presiding.

*Trespass* for taking the plaintiff's horse. The defendant justified as collector of taxes of the town of Monmouth for the year 1852, and a sale thereof under a warrant from the assessors of that town for that year. A tax was committed to defendant to collect assessed on the plaintiff's poll, real and personal estate to the amount of $10,94.

After the evidence was introduced, the case was taken from the jury, by consent, to be determined by the full Court, they having power to draw such inferences as a jury might from the testimony, and to enter such judgment as the law and justice may require.

From the evidence reported and the admissions of the

parties, the Court found that the plaintiff dwelt, at the time the tax was assessed, on territory, which at the time of the incorporation of Monmouth, was embraced within that town; that in March, 1809, the Legislature changed the western line of that town, whereby the territory above referred to became a part of the town of Leeds.

It appeared that Monmouth had claimed and exercised jurisdiction over this disputed territory for twenty-five years by taxing property therein, and establishing a school and highway district also; and that persons residing there had paid taxes on their property there, in Monmouth, and when they voted, voted there also. The residents had also been appointed surveyors in said town and discharged the duties as such, and had performed military duty therein.

The plaintiff gave in his valuation to the assessors of Monmouth in 1849, '50, and '51. Since 1850, both Monmouth and Leeds claimed this territory, and in 1852, the plaintiff was taxed in both towns for the same property.

The value of the horse taken by the collector was testified to be $100, another witness said he was passing the plaintiff's house the morning of the sale, when he told him his horse was to be sold, and wanted him to go into good hands. The witness bid him off for $50, and subsequently let the plaintiff have him for the same, but he did not purchase for him.

*May*, for defendant, maintained, 1st, that the true construction of the Act of March, 1809, left the disputed territory in Monmouth. The object of that Act was only to straighten the line between *Monmouth and Leeds*. That part of the western line between Monmouth and Greene is not touched.

2. The whole subsequent conduct of the towns for forty years shows this construction to be the true one. It had been acquiesced in by all parties. 15 Pick. 44.

3. The actual exercise of municipal jurisdiction over this territory by the town of Monmouth for more than twenty years makes that jurisdiction rightful just in the same way

Ham v. Sawyer.

and on the same principle that a disseizin for twenty years gives title to the soil.

4. Such jurisdiction actually exercised uninterruptedly for twenty years is sufficient to justify taxation and the enforcement of a tax. *Hathorn* v. *Haines*, 1 Greenl. 238.

5. We say the facts show that the plaintiff consented to be taxed and so the officer is not a trespasser, for what is done by consent, express or implied, is not a trespass.

6.. If defendant is liable it is only for the actual damages. The plaintiff upon the facts has suffered only about $11.

*Bradbury*, for plaintiff.

1. The true construction of the Act requires its extension to the south line of Monmouth. The monument is named and there it was to terminate.

2. The right to tax is derived from the statute and cannot be *enlarged*, or *acquired* by the exercise of the power. The assumption of that power by Monmouth in regard to the plaintiff and its continuance for a series of years can confer no authority to continue the wrong. Towns exist only at the pleasure of the State. *Hooper* v. *Emery*, 14 Maine, 375; *Gorham* v. *Springfield*, 21 Maine, 58; *Rumford* v. *Wood*, 13 Mass. 193; R. S., c. 14, §§ 22, 23.

3. The bounds of Monmouth were established in 1809, and remain so to this day. Laws of 1821, c. 114, § 8. R. S., c. 5, § 24.

4. The towns cannot change their boundaries. *Freeman* v. *Kenney*, 15 Pick. 44.

5. Jurisdiction cannot be acquired by *user*, nor lost by *non-user*.

6. The defendant had no lawful authority to take the property, his warrant being void.

TENNEY, J. — By an Act of the Legislature of Massachusetts passed on March 3d, 1809, entitled an Act to rectify and establish the line between the towns of Monmouth and Leeds in the county of Kennebec, it was provided, that the line between those towns shall hereafter be as follows, viz;

beginning at a stake and stones about fifteen rods west of the Bog stream, so called; thence running south 9 degrees west to a beech tree on the south line of Monmouth.

It is admitted by the parties that prior to the passage of the Act referred to, the line between the territory of Monmouth and of Leeds was west of the line established by that Act, and was the west line of the Plymouth patent, was a crooked, irregular line, and included in Monmouth the disputed territory; and if the west line of Monmouth is to be run straight to the south line thereof, it will exclude from that town the plaintiff's land.

The town of Monmouth was incorporated on January 20th, 1792, and is bounded thus, "beginning at the southeasterly corner of Winthrop on the west side of Cobbosseecontee great pond; thence running south southwest six miles to a heap of stones erected for a corner; thence west northwest about five miles to the westerly line of the Plymouth patent; thence northerly on the westerly line of said patent about six miles, until it intersects a line running west northwest from the southeasterly corner of Winthrop aforesaid; thence east southeast by the southerly line of Winthrop to the first mentioned bounds."

Leeds was incorporated on February 16th, 1801, and by the Act of incorporation is bounded on the town of Monmouth from the northeast corner thereof to the town of Greene. The northerly line of the town of Greene at its eastern extremity was northerly of the south line of Monmouth by the original Acts of incorporation, the town of Greene having been incorporated on June 18th, 1788.

The part of the town of Monmouth which by the Act of March 3d, 1809, was excluded therefrom, and was south of the south line of Leeds became a part of the latter, and not of the town of Greene.

By the Act of March 3d, 1809, the line thereby established was a straight line. Under that Act, and the admissions in this case, the farm of the plaintiff became a part of the town of Leeds.

It is however contended that the town of Monmouth in its corporate capacity, and the officers thereof, having extended their municipal authority over the territory in question for more than twenty years, and this authority having been acquiesced in by the town of Leeds in their corporate capacity, and by the inhabitants residing on this territory, it has established the legal right of Monmouth to treat it as a part of that town, and the inhabitants thereon as its citizens.

The boundaries of towns are created by Acts of the Legislature. The inhabitants thereof cannot by direct corporate Acts change those boundaries, and it is difficult to see in what manner the Acts and the acquiescence referred to, can produce a more effectual alteration.

By the statutes of 1821, c. 114, § 8, the bounds of townships were to remain as before granted, settled and established, and in R. S., c. 5, § 24, is a similar provision.

The Legislature has authority to change the boundaries of towns at pleasure. And the provisions referred to in the statutes of 1821, and in the Revised Statutes, have prevented the acquisition by Monmouth of the prescriptive rights contended for, if such could by possibility be in any manner obtained.

The plaintiff not being a subject of taxation in the town of Monmouth for his poll, his real estate or personal property, the tax was unauthorized and void. And the taking of his property was a trespass in the defendant.

The only criterion for the damages is the value of the property when it was taken. This is shwon to have been the sum of $100. But it appears that a balance of the avails of the sale of the horse remained, after the appropriation of a sum sufficient to discharge the tax against the plaintiff and costs, which was paid to him. This balance should be deducted from the value of the property taken.

*Defendant defaulted.*

SHEPLEY, C. J., and RICE, APPLETON and CUTTING, J. J., concurred.