ELIZA CRUGER, Respondent, *v.* WILLIAM DOUGHERTY, Appellant.

An assessment, (under the statute of 1846, as amended in 1858 [Laws of 1846, p. 466; Laws of 1858, p. 600], authorizing the assessment against persons entitled to receive rents reserved on leases in fee, or for lives, of the amount thereof, as personal estate), which is, in the aggregate, of all rents reserved by the various leases upon the whole of a certain patent of land, without specifying the amount reserved upon each lease, or any of the leases, and is assessed against " J. K., and other legal heirs of the late J. K., deceased, or their heirs or assigns," the J. K. first named being dead at the time of the assessment, is void, and a sale for non-payment of a tax levied upon such assessment conveys no title to the purchaser.

It is fatally defective in not complying with the original statute, directing that the assessment should be " upon the person or persons entitled to receive the rents, in the same manner and to the same extent as any personal estate."

It is also defective in not specifying " *each* rent assessed," as required by the amendment of 1858.

The fact, that taxes, levied upon assessments made in this manner in previous years, had been paid by the owners of the rent, creates no estoppel upon their objecting to the validity of the assessment in question.

It is a well established rule of law, that one, claiming to have acquired title to the property of another under statutory proceedings, must show that every material provision, designed for the security and protection of owners, has been substantially complied with.

*Semble*, that, in an action of ejectment, proof that a party other than the defendant, and from whom he does not claim, holds merely a sheriff's certificate of sale of the land in question, is no defence. (PECKHAM, J.)

(Argued November 2, 1870; decided November 29, 1870.)

APPEAL from a judgment of the late General Term of the Supreme Court in the sixth judicial district, affirming judgment on a verdict directed for the plaintiff at the circuit.

This was an action of ejectment to recover an undivided one-sixth part of lot No. seven, containing 150 acres in the Kortright patent, alleged to have been conveyed in 1789, by John Kortright to David McIlwain, by a lease in fee, reserving an annual rent in perpetuity, of sixpence sterling per acre, and

the right of reëntry, in case any rent remained due for the space of three months, but reserving no such right upon the happening of any other event, or the breach of any other condition.

John Kortright died intestate in 1810, leaving six children, his heirs-at-law, of whom the plaintiff was one, and one of whom was named John Kortright. In 1826 the plaintiff married Nicholas Cruger, and living issue was born of this marriage. Nicholas Cruger died in June, 1868. In 1861 he conveyed by quitclaim deed, all his interest in the Kortright patent, to his son Governeur Cruger, and in 1863 Governeur conveyed the same by quitclaim deed to the plaintiff.

This action was commenced in January, 1868. David McIlwain died over fifty years ago. In 1812, and while in possession, he executed, on the back of his counterpart of the lease, an assignment of the lease; and there was evidence that he occupied lot seven before his death; that he left two sons, David and Andrew, who continued in possession of the lot; that David, the younger, died soon after his father, leaving children, who continued to occupy the whole lot together with Andrew, until March, 1845, when Andrew McIlwain and the widow and heirs of David McIlwain, conveyed thirty acres of lot seven to Edmund Keeler; and previously thereto in June, 1843, Andrew McIlwain had conveyed one acre of the same lot to Keeler, which included all that portion of lot seven in possession of the defendant. Keeler occupied until his death, and after his death his administrators, by order of the surrogate, conveyed that portion of lot seven owned by him to James Dougherty, in May, 1852. James Dougherty occupied until February, 1856, when he conveyed one acre to his son, the defendant, and continued in possession of the remainder of the thirty acres until his death, when the same passed by his will, to his wife, Ann Dougherty. In 1862, Ann Dougherty conveyed another acre to defendant, and these two acres were all of lot seven, of which the defendant was in possession at the time of the commencement of this action. Andrew McIlwain, after the convey-

ance to Keeler, continued in possession of the remainder of lot seven until 1852, when he died, and by his will devised the same to Dean F. McIlwain, who went into and continued in possession until the commencement of this action. The conveyances to Keeler from McIlwain, and by Keeler to Dougherty were expressly subject to the rents and reservations in the Kortright lease.

The plaintiff sets forth in her complaint title in fee in John Kortright, at the time of the execution of the alleged lease; and to establish this, she introduced in evidence under defendant's objection, what purported to be a certified copy from the secretary of state's office, of letters patent from the crown of Great Britain, granted in 1770 to Lawrence Kortright, and twenty-one others named therein. It was not under seal, or attested in any way.

There was no evidence of any conveyance from the twenty-one others, named in the patent, of their interest to Lawrence Kortright, or his grantees. Lawrence Kortright conveyed his interest in the patent to John Kortright, by deed, dated August 24, 1788.

As further proof of title in John Kortright, the plaintiff, introduced in evidence a certified copy from the secretary of states's office, of what purported to be a map of the Kortright patent, made by Alex. Colden, Sur.-Gen. in 1770, but not proved, acknowledged, or authenticated in any way, also a certified copy from the comptroller's office of the payment of quitrents on the Kortright patent by John Kortright and his heirs.

The evidence of the execution of the alleged lease, was the production of what purported to be a record of the counterpart, signed by John Kortright; there was no evidence of its execution by John Kortright; no proof or acknowledgment of any such execution; and no evidence that it was placed upon record by McIlwain, or any of his grantees; it was not recorded until 1852, some nine years after the title to the premises in question had passed out of the McIlwains.

There was no direct evidence of the execution of the counterpart of the lease by David McIlwain, or that he entered into possession of the lot under it.

There was evidence that David McIlwain, Andrew McIlwain, and Dean F. McIlwain had paid rent on the whole lot seven, from 1820 to 1858, but no evidence that after the conveyance to Keeler in 1843, any rent was paid by the occupants of that part of the lot in possession of the defendant, or that they authorized or recognized the subsequent payments of rents made by the occupants of the remainder of the lot.

It was not shown that there was no sufficient personal property on the premises to satisfy the rent, at the time of the commencement of this action; nor did it appear that any demand of the rent had been made according to the requirements of the common law.

It appeared from the evidence, that Nicholas G., John and Robert Kortright had severally acted as agents for the plaintiff and the other heirs of John Kortright in the collection of rents and the transaction of other business on the Kortright patent from 1829 to 1850, and that Robert Parker, of Delhi, had acted as such agent from 1850 to 1866.

The cause was tried at the Delaware February circuit, 1869, before Mr. Justice BOARDMAN and a jury.

At the close of plaintiff's evidence, defendant moved for a nonsuit, which was denied.

The defendant in his answer, denied the title of the plaintiff, and her rights of possession; the execution of the lease, and that he or his grantors went into possession under it; he also set up adverse possession; and as a further defence, alleged title out of the plaintiff by virtue of a sheriff's sale, made in June, 1865, under a warrant issued by the county treasurer, for the collection of a tax levied in 1864, by the board of supervisors against the plaintiff and others, 'for rents reserved upon the Kortright patent under the act of 1846.

The proof shows, that assessors of the town of Kortright, in 1864, placed at the end of their roll for that year an assess-

ment, intended to be of the rents reserved under leases upon the Kortright patent, in the following form:

" THE KORTRIGHT PATENT.

" John Kortright and others, legal heirs of John Kortright, late of the city of New York, deceased, or their heirs or assigns, for rents reserved in the town of Kortright, in the county of Delaware, subject to taxation, estimated at a principal sum, which at a legal rate of interest (seven per cent) will produce an income equal in amount of such rents." Opposite the last line of this entry, and under the column " personal," was carried out the amount $26,195.

In the town of Kortright there were 111 or 112 lots called lease lots upon the Kortright patent and thirty lots called soil lots.

The rent was uniform throughout the patent, which was sixpence sterling per acre or $16.67 per lot of 150 acres. These 112 lots, valued at a sum which would yield cash $26,656, would be $238 for each lot, or $26,656 for the whole 112 lots; $461 more than the amount estimated by the assessors.

Upon this assessment, the board of supervisors of Delaware county for 1864 levied a tax of $632.41 against the owners of these leases, who claimed to be the heirs of John Kortright, deceased. This tax was returned unpaid by the collector of the town of Kortright.

The plaintiff's agent was called upon to pay the tax, but refused.

The county treasurer then issued his warrant for the collection of this tax to the sheriff of the county, who, under it, levied upon the interest of the plaintiff in the premises in question, advertised, and in June, 1865, sold it. Upon that sale Dean F. McIlwain purchased plaintiff's interest in the whole of lot seven and took the sheriff's certificate of sale, a duplicate of which was immediately recorded in the clerk's office.

The plaintiff never redeemed her interest from this sale.

The defendant offered to prove that the assessors made diligent inquiry to ascertain the names of the owners of the rents reserved upon the Kortright patent and assessed the same according to the best information within their power, which evidence the court excluded, holding that "the assessment roll must stand on its own foundation."

It appeared from the evidence that from 1846 to 1863, both inclusive, the interest of John Kortright's heirs in the rents reserved upon the patent had been assessed in the same manner and to the same persons, and by the same description and designation as in the assessment roll of 1864, and that in each of those years a tax had been levied by the board of supervisors upon such assessments, in the same manner, and to the same persons, and by the same description and designation, as in the tax roll of 1864, and that the plaintiff, by her agent, in each year, had paid the tax.

At the close of the evidence the defendant requested the court to direct the jury to render a verdict for the defendant, which the court declined to do.

The defendant's counsel then requested the court to submit the whole case to the jury for their determination, also several questions of fact, which the court declined to do.

The court, upon request of the plaintiff, ordered and directed the jury to find and render a verdict for the plaintiff for the possession of the premises described in the deeds from James Dougherty and Ann Dougherty to William Dougherty, given in evidence, and for six cents damages, to which the defendant excepted.

Exceptions having been ordered heard in the first instance at General Term, judgment was ordered there for the plaintiff upon the verdict.

*Lyman Tremain*, among other points, insisted that upon the plaintiff's theory that she could forfeit, as to one-sixth, she became a tenant in common with the defendant, and without proof of actual ouster by her co-tenant, could not recover; and cited *Stuyvesant* v. *Davis* (9 Paige, 427); *Norman* v.

*Wells* (17 Wend., 136); 1 Duer, 516; 6 Barn. & Cr., 519; 2 Russ., 174; *Beach* v. *Nixon* (9 N. Y., 35); *Van Rensselaer* v. *Chadwick* (24 Barb., 333); *Main* v. *Davis* (32 Barb., 467); *B'k* v. *Brown* (26 N. Y., 564); Coke Litt., § 217; *Cruger* v. *McLaughry* (41 N. Y., 223); *Edwards* v. *Bishop* (4 N. Y., 61); *Arnold* v. *Steeves* (10 Wend., 514); 3 R. S., part 3, chap. 5, tit. 1, § 20.

He insisted that the following principles in regard to the power and duties of assessors and the validity of assessments were settled.

Boards of assessors are judicial tribunals clothed with judicial functions. Their assessments are to be regarded as a judgment, and can only be assailed, collaterally, for fraud or excess of jurisdiction. (*Barhyte* v. *Shepherd*, 35 N. Y., 251; *Parish* v. *Golden*, 35 N. Y., 251; *Livingston* v. *Hallenbeck*, 4 Barb. R., 9; *Hibbard* v. *N. Y. & E. R. R. Co.*, 1 Smith R., 457; *Heywood* v. *The City of Buffalo*, 4 Kern., 539; *Swift* v. *City of Poughkeepsie*, 37 N. Y. R., 514; *People* v. *Supervisors of Chenango county*, 11 N. Y. R., 573; *Voorhies* v. *Banks*, 10 Peters, 449; *Pullan* v. *Kensinger*, 9 Am. Law Reg. N. S., p. 557.)

The assessors of the town where leased lands are situated have jurisdiction over the subject-matter, viz., the rents reserved, and over the persons of the owners of such rents, who, without regard to their residence, are to be considered taxable inhabitants. (*Barhyte* v. *Shepherd*, 35 N. Y. R., 251.)

In reviewing proceedings before boards of assessors, which are usually composed of unlearned men, their acts, constituting as they do, part of the legal arrangements for carrying on the government and providing for its revenues, should be liberally construed, with a view to the beneficial ends in view, and to prevent a failure of the objects for which such boards were created. (*Hudler* v. *Golden*, 36 N. Y. R., 446; *Weed* v. *Tucker*, 19 N. Y. R., 443; Smith's Statutes, 782, 796; *Rex* v. *Lexdall*, 1 Burr, 447; *Merchant* v. *Langworthy*, 6 Hill, 646; *Holmes* v. *Carldy*, 31 N. Y. R., 200; *The People* v. *Utica Ins. Co.*, 15 J. R., 380.)

Where such boards have jurisdiction, any departure from the mode prescribed by statute in the form or method of their proceedings intended to promote system and uniformity, not affecting the equality of taxation, while it may subject the officer to animadversion, or perhaps to punishment, for not observing them, yet their observance is not a condition precedent to the validity of the tax, and these statutory provisions are considered as directory merely. (*Swift* v. *City of Poughkeepsie,* 37 N. Y. R., 513 ; *Easton* v. *Callendar,* 11 Wend.; *Cunningham* v. *Bucklin,* 8 Cow., 187 ; *Wilson* v. *The Mayor,* 1 Den., 595 ; *Butler* v. *Potter,* 17 J. R., 145 ; *Coleman et al.* v. *Anderson,* 10 Mass., 105 ; *Tirrell* v. *Merrill,* 17 Mass., 120.)

In such cases, the only remedy is by certiorari or other proceeding to correct the irregularity, and if this remedy is not adopted, then, the " whole question is foreclosed and cannot be reopened." (*Torry* v. *Medbury,* 21 Pick, 64 ; *Barhyte* v. *Shepherd,* 35 N. Y., 251 ; *People* v. *Cook,* 14 Barb., 290 ; *Jackson* v. *Young,* 5 Cow., 269 ; 19 W. R., 143 ; *People* v. *Cook,* 8 N. Y., 89 ; *Voorhies* v. *Banks,* 10 Peters, 449.)

The designation of the owners adopted in the assessment had been recognized as correct for eighteen years previous to 1864, and they had paid taxes levied on such assessment during all those years. It was for that reason, as against the plaintiff, a sufficient designation. (*Patchin* v. *Ritter,* 27 Barb., 35 ; *Petre* v. *Woodworth,* 3 Caines, 219 ; *The Methodist Church* v. *Tryon,* 1 Den., 451 ; *Brown* v. *Bank,* 6 Hill, 443 ; *Wheeler* v. *Anthony,* 10 Wend., 346 ; *Van Voorhees* v. *Budd,* 39 Barb., 479.)

*Amasa J. Parker,* for the respondent, among other points, urged that there was no necessity of proving a demand of rent, or want of sufficient distress on the premises, and cited *Hosford* v. *Ballard* (39 N. Y., 147) ; *Cruger* v. *McLaughry* (2 Hand, 219) ; *Van Rensselaer* v. *Dennison* (35 N. Y., 393).

Upon the defects of the assessment, he cited *Whitney* v. *Thomas* (23 N. Y., 281); *Van Rensselaer* v. *Van Allen*, Ms., opinion of Judge GOULD.

Neither the warrant nor sale, the words, "or their heirs and assigns" being omitted from the county treasurer's warrant, corresponded with the assessment, and they were therefore void, and were also void because the warrant directed the sheriff to collect the treasurer's commissions. (Laws of 1846, p. 466, § 4; *Craft* v. *Merrill*, 14 N. Y., 456; *In re Treefler*, 44 Barb., 46.)

Every requisite of a statute, authorizing proceedings by which the title to real property is taken from the owner and transferred to the purchaser, must be strictly complied with, or the proceedings will be void.

By the Court—PECKHAM, J. Many questions were made on the trial, as to the proof of the original patent, and as to the proof of the proper title of the plaintiff. We do not think any one well taken, but if either were, it became immaterial, by the further proof, that the defendant held under and subject to that title. The patent contained some 22,000 acres, besides lands for roads, etc., therein. A large portion of the lots embraced in the patent, were held by grantees of the original patentee or their assigns, under grants in fee reserving rent. This lot was so held, and rent had been paid thereon. Another portion had been sold in lots in fee simple absolute.

It is also insisted here, that the plaintiff showed herself to be a tenant in common with the defendant in this lot, as she showed title to only one-sixth of the rents reserved; and her co-owners not having elected to enforce their forfeitures, she would be a tenant in common with defendant under certain circumstances, and was bound to prove an ouster.

It is a sufficient answer to this to say that no such point was presented at the trial, where the defective evidence might have been supplied, and it cannot now be raised.

The defendant further insists that the court erred in directing a verdict, and in not submitting the case to the jury. We think not. The facts were undisputed and the rights of the parties were mere matters of law, which the court was bound to decide.

The plaintiff's right to one-sixth of the premises being established at the trial by proof of title, and of rent being due and unpaid ; the defendant proved that this lot had been sold by the sheriff under a warrant issued by the treasurer of Delaware county, for the non-payment of a tax claimed to have been imposed upon plaintiff and others as owners of the rents reserved by the authorities of the town of Kortright, where the lot was situate, and that the time to redeem had expired before the commencement of this suit. It was conceded that no deed had been executed by the sheriff on such sale, but only a certificate of sale, and it is urged that that proceeding showed title out of the plaintiff. The title never was perfected, and though it be a good defence, if held by the party in possession, yet when held by another, it does not show title out of the plaintiff. It is merely an equitable title, a right to have a legal and perfect title ; but not having it until perfected, such a title would not enable its possessor to maintain ejectment. Such is the substance of the statute, and so are the authorities. (2 R. S., 373, §§ 61, 62.) The last clause of section 62, says, " which conveyance (the sheriff's deed) shall be valid and effectual to convey all the right, title and interest, which was sold by such officer." (*Wright* v. *Douglass*, 2 N. Y., 373 ; *Miller* v. *Lewis*, 4 N. Y., 554 ; *Thomas* v. *Crofeet*, 14 N. Y., 474.)

But waiving this answer to the defence, the point is presented, whether this alleged tax sale was void, by reason of failure to comply with the directions of the statute in imposing the tax, and in the proceedings thereafter.

The statute authorizing this tax, makes it " the duty of the assessors of each ward and town, while engaged in ascertaining the taxable property therein, by diligent inquiry, to ascertain the amount of rents reserved in any leases in fee,

or for one or more lives, or for a term of years, exceeding twenty-one years, and chargeable upon lands within such town or ward, which rents shall be assessed to the person or persons, entitled to receive the same, as personal estate, which it is hereby declared to be, for the purpose of taxation under this act." (S. L., 1846, p. 466, § 1.)

The second section requires the board of supervisors to assess such taxes "upon the person or persons, entitled to receive such rents within the town or ward, where the lands upon which such rents are reserved, are situated, in the same manner and to the same extent as any personal estate of the inhabitants of such town."

The third section makes it the duty of the collector, if it be not paid, to levy said tax by distress and sale of the goods, etc., " of the person against whom the same is assessed" within the town, etc.

The fourth section requires the county treasurer, when the collector returns the tax unpaid, to issue " his warrant to the sheriff of any county, where any real or personal estate of the person" taxed may be found, commanding its collection.

The fifth section requires the sheriff to proceed with such warrant, as with executions issued by the county clerk upon judgments, etc.

This act was amended in 1858, so as to require the assessor in "all cases of assessment" under the act of 1846, above referred to, to specify in the assessment rolls "each rent so assessed," and gives power to the board of supervisors to reduce the assessment of any "person" assessed under said act so as to make it just. (Laws of 1858, p. 600, § 1.)

In assessing the tax, under which this lot was sold by the sheriff, the assessors put it down in their roll as follows : " The Kortright patent, John Kortright and others legal heirs of John Kortright, late of the city of New York, deceased, or their heirs or assigns, for rent reserved in the town of Kortright, in the county of Delaware, subject to taxation, estimated at a principal sum, which at a legal rate

of interest will produce an income equal in amount to such rents. $26,195; $632.41, personal."

The county treasurer's warrant described the persons entitled to receive the rent as "John Kortright and others, legal heirs of John Kortright, late of the city of New York, deceased," and commanded the sheriff to make the tax of their property. The notice of sale simply described the Kortland patent, which lay partly in the town of Kortright, and partly in the town of Davenport, and then the sheriff sold the separate lots therein without any separate advertisement.

The separate lots contained 150 acres each, were about 112 in number, and were all sold by the sheriff under said warrant.

The first objection to these taxes is, that the assessors have not " assessed them upon the person or persons entitled to receive them," as they are required to do by the statute.

The assessment must be made in this case upon these persons, "in the same manner, and to the same extent as any personal estate of the inhabitants of such town."

The statute as to assessment for personal estate requires the name of the person taxed to be put down in the roll in one column, and the full value of his personal property in another. (1 R. S., 390, § 9.) It is not denied that the names should be put down, but it is insisted that they were sufficiently inserted on the tax roll. The statute in this particular must be substantially complied with. Its entire omission would be fatal to the validity of the tax.

Where the assessment of a tax for land was made against a person neither " owner or occupant " of the land as required by the statute, the assessment has been held to be absolutely void. ( *Whitney* v. *Thomas,* 23 N. Y., 281, at 284.) This, it must be remembered, is an assessment for personal property against these parties.

Is the statement made here any better than if none had been made as to the names of the persons assessed? Only one person is named in the assessment roll, " John Kortright,"

and he had been dead five years before this assessment was made.  He was a son of John Kortright, once owner of the patent, who died in 1810.

It cannot be pretended that it was sufficient to name him who had been dead five years.  The other designations are mere alternative classes.  " Other legal heirs of John Kortright, deceased, or their heirs or assigns."

It is said that the assessors acted judicially, and that this may be likened to a judgment.  Such a judgment against one of these classes would scarcely be claimed to be valid, especially a judgment entered without process or notice to any one.

It is, perhaps, not necessary to say, that the persons should literally be named in all cases; but they clearly should be as distinctly identified, as if named.

In *Wheeler* v. *Anthony* (10 Wend., 346), it was held that a district school tax assessed upon " the widow and heirs of Zopher S. Wheeler, deceased," imposed upon them as owners and occupants of a farm, was properly imposed in that form.  It was said by the court in that case, that " when property is owned by a single individual, it is proper and necessary that the name of such individual should be inserted in the tax bill; but when a farm is owned or possessed by a mercantile or other firm, the assessment to such firm would answer the same purpose as well as writing out each name.

If this were true, in that case, as to such a tax for a farm, a tax can scarcely be imposed for personal property against tenants in common in any such form, as the statute authorizes no such tax.

If tenants in common of personal property were taxed as a body for so much personalty, it would afford no opportunity to any one of them to swear it off on account of debts that he might owe.

The statute says that the roll must state, first, " the names of all the taxable inhabitants, and fourth, the full value of the personal property owned by such person, after deducting the just debts owing by him."   (1 R. S., 390, § 9.)

Such a taxation to a body of tenants in common complies with neither of these provisions, and affords no opportunity to an individual to have his tax corrected. A firm is not a person, like a corporation. Hence the tax as to personal property should be upon each individual, including his interest in the firm, as in all other taxable personal property. But if the tax be valid upon a firm, it does not follow that it would be valid when imposed upon a body of tenants in common, in personalty, as a body.

It is also insisted that part of these names or classes inserted in this tax roll may be rejected as surplusage.

The difficulty is, that there is nothing by which to determine what is surplusage, which end may be struck off. Besides, it is not a case of a thing or person already sufficiently described with a superfluous inaccuracy added. This tax is imposed as much upon one of these three classes as upon either of the others.

It is also urged that these persons are estopped from questioning this tax now, because they have been assessed in this form for eighteen years prior to this assessment, and have always paid it.

The payment of a tax for any number of years without legal proceedings, will not give validity to such proceedings when they are questioned, if taken without authority of law. One might almost as well defend an action for an assault and battery, by pleading that he had beaten the plaintiff every year for many years, and that this was the first time the plaintiff had ever complained.

It is further objected to this assessment, that it was made in gross for all the rents reserved in the whole patent, instead of " specifying such rent, so assessed," as required by the act of 1858.

One object of this amendment of the act was probably to afford greater security to the party entitled to receive the rent, affording him greater facility in correcting erroneous assessments.

If the assessment were made for "each rent" separately, and the rent upon one or two lots had been extinguished, the party could readily show it, without going over the whole patent to show that the gross sum assessed was too large. So of any other mistake as to any particular rent.

The county treasurer seemed to think the assessment illegal, and in issuing his warrant, he cut off two classes named in the assessment, and issued it against the only person named, who had been dead for years, and others, heirs, etc.

If the assessment were void, the county treasurer could scarcely make it valid by his warrant.

It is insisted that the assessors, in making this assessment, acted judicially; that they had jurisdiction of the subject-matter, the rents, and of the persons entitled to receive them, and although they committed errors, yet their action was not void, but only voidable. The liability of assessors is not here in question, and it is perhaps not necessary to discuss it.

But, if the purchaser, in this case, were a defendant claiming to hold this property under these proceedings, he would fail. He would fail even upon the ground assumed by the defence.

Surely it will not do to say, that because there are rents reserved in the town, and they are receivable by some one, therefore whatever the assessors may do in relation to an assessment in such case is valid, whether it be in substantial compliance with the statute or not. The assessment must be made to some one. It is not sufficient to say generally to the persons entitled to receive the rents. They must be named and indicated. Until that is done, the assessors have passed no specific judgment have really exercised no jurisdiction.

It is a rule well established by authority, that when one claims to hold another's property under statutory proceedings, as under a sale for taxes, he must show that every material provision designed for the security of the persons taxed, for their protection, has been substantially complied with, otherwise the claim will fail. In fact the rule is generally laid

down with much more strictness. (*Bloom* v. *Burdick*, 1 Hill, 131; *Sharp* v. *Spier*, 4 Hill, 76; *Doughty* v. *Hope*, 3 Denio, 594; *Whitney* v. *Thomas*, *supra ;* *Van Rensselaer* v. *Witbeck*, 3 Seld., 517; *People* v. *Chenango Suprs.*, 1 Kern., 563; *Thacher* v. *Powell*, 6 Wheat., 119.) The cases of *Swift* v. *The city of Poughkeepsie*, (37 N. Y., 513), and *Barhyte* v. *Shepherd* (35 N. Y. 251) have not changed this rule.

In *Torrey* v. *Millbury* (21 Pick., 64 at 67), Ch. Justice SHAW, in delivering the opinion of the court, said : "In considering the various statutes regulating the assessment of taxes, it is not always easy to distinguish which are conditions precedent to the legality and validity of the tax, and which are directory merely. One rule is very plain and well settled, that all those measures which are intended for the security of the citizen, for insuring an equality of taxation, and to enable every one to know with reasonable certainty for what polls, and for what real and personal estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent, etc., and if not observed, he is not legally taxed.

"But many regulations are made by statute, intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which, does in no respect affect the rights of tax-paying citizens. These may be considered directory."

These remarks apply with great force to the entire omission by the assessors, to tax each rent separately, as absolutely required by the act of 1858. We regard that act as imperative, and not directory merely.

For the reasons above stated, we think the purchaser under this assessment took no title.

There are other defects insisted upon not deemed necessary to consider.

The judgment is affirmed.

All the judges concurring judgment affirmed.