WEEKS v. GILMANTON.

MACK v. GILFORD.

Municipal charters are not contracts in the sense of the provision of the federal constitution, which prohibits the obligation of contracts being violated.

Real estate must be taxed in the town in which it is situate.

Where, on a division of a town in 1812, by an act of the legislature, it was provided that each tract of land through which the divisional line passed should be considered as belonging in the town where the owner

lived, but if such owner was a non-resident in either of said towns, it should be taxed in the original town, such provision will be regarded as temporary, and intended only for the convenience of the existing land-owners; and long acquiescence therein by the parties in interest will not estop them to deny its validity.

PETITIONS, of Benjamin Weeks for abatement of tax assessed against him in Gilmanton, and of Maria S. Mack for abatement of tax assessed against her in Gilford, for the year 1880. Facts agreed.

In 1812 Gilford was, by act of the legislature, set off from Gilmanton and constituted a separate town, with all the rights and liabilities usually belonging to such corporations, excepting that in the charter of Gilford there is this enactment: "And be it further enacted. that each tract of land which may be dissected by the aforesaid divisional line, which is owned by any inhabitant of Gilmanton or Gilford, shall be considered as belonging to the town in which such owner resides; but if such owner shall be a non-resident in either of said towns, the lot shall be taxed in the town of Gilmanton."

Benjamin Weeks is a resident of Gilford, and from 1812 to 1876 the land now owned by him was owned by one Sanborn, or his grantors, residents in Gilmanton at the time of the division and since. This land was one of the original lots in Gilmanton, and was divided by the town line between Gilmanton and Gilford. From 1812 to 1876, when Weeks purchased the lot of Sanborn, it was taxed in Gilmanton, and was so taxed in 1880. In that year the Gilford part of said lot was also taxed by that town; and it is agreed that if any sum is abated from the tax assessed by Gilmanton, it should be the sum of twelve dollars.

The petitioner Mack is and always has been a resident of Gilmanton. and has owned the land taxed since the death of her father in 1831, from whom she acquired her title, and who resided in Gilmanton in 1812, when Gilford was incorporated. The land now taxed to the petitioner in Gilmanton was an original lot which was divided when Gilford was constituted a town. The whole lot was taxed by Gilmanton in 1880, and was also taxed by Gilford for that portion of the land lying therein. If the taxation by Gilford was improper, the sum of nine dollars is to be abated by that town.

*Jewell & Stone*, for Weeks and Gilford.

*Cogswell*, for Mack and Gilmanton. I. The provision as to the taxation of the divided lots was in accordance with the agreement of the parties in interest (Lancaster's Hist. Gilmanton 112), and when it was ratified and confirmed by the legislature in the Gilford charter it became a binding contract, under which vested

rights have been acquired, and which cannot now be set aside. That the legislature had the right so to provide in the charter was decided in *Bristol* v. *New Chester*, 3 N. H. 524, *Londonderry* v. *Derry*, 8 N. H. 320, and in *Berlin* v. *Gorham*, 34 N. H. 266.

II. If *s.* 7, *c.* 40, Rev. St. of 1842, requiring real estate to be taxed in the town where situate, changed the method of taxing such property and repealed the provision in question, it is immaterial, because for more than sixty years all the parties have acquiesced in the method of taxation prescribed in the Gilford charter, and without objection. Upon the point of long continued usage, see *Rogers* v. *Goodwin*, 2 Mass. 475, and *Capen* v. *Glover*, 4 Mass. 305.

BLODGETT, J. The provision in the act incorporating Gilford from a part of the territory of Gilmanton, by which it was enacted that each lot "dissected" by the divisional line between said towns should be considered as belonging to the town in which the owner resided, but if non-resident in either of said towns, the lot should be taxed in Gilmanton, was not, as contended by counsel for Gilmanton, in the nature of a contract, and no vested right so to tax such lots has been acquired by those towns. Municipal charters are not contracts in the sense of the constitutional provision, which prohibits the obligation of contracts being violated, but are granted for public purposes, and may be amended or repealed at the discretion of the legislature. Cool. Tax. 56; Dill. Mun. Cor. (3d ed.) *s.* 82; Cool. Con. Lim. (4th ed.) 232, 233, and cases cited.

Nor is it material that for more than sixty years the parties in interest acquiesced in the method of taxation prescribed by the Gilford charter; for the question arising here is not to be determined by usage, however long established, but by the statutes regulating and governing taxation, in accordance with the constitution, which were in force when the taxes in question were assessed *(Dillingham* v. *Snow,* 5 Mass. 547, *Ham* v. *Sawyer,* 38 Me. 37, *Hughey's Lessee* v. *Horrel,* 2 Ohio 231), and the mere payment of taxes improperly assessed, without objection, will not estop a person to resist further assessments. *Landon* v. *Litchfield,* 11 Conn. 251; *Cruger* v. *Dougherty,* 43 N. Y. 107; Big. Est. (2d ed.) 463.

The general principal as to taxation is, that states and municipalities have jurisdiction only over persons and property within their respective limits; and that as to persons and property outside such limits there is not only no jurisdiction, but the want of legal interest in the tax also precludes subjection to its burden, because there must be between the power imposing the tax and the taxpayer a reciprocity of duty and obligation. Cool. Tax. 121, and cases cited. Tested by this principle, which is properly regarded as sound, the provision in question cannot stand; and it is also wholly inconsistent with the exercise of the well defined powers

which towns from their nature possess and are entitled to exercise, of which the right to tax all persons and property within their limits is one of the most valuable.    But without regard to these considerations there is another, which, in this state at least, cannot be overlooked, and that is, that the provision under consideration is utterly irreconcilable with the fundamental principle of taxation, that like classes of property shall bear a like burden of taxation; for, by it, lots through which the divisional line passes, and belonging to residents, are not to be taxed on the basis upon which lots in general are taxed, but upon the basis prevailing in Gilford or Gilmanton, as the owner may happen to reside; but if he is a non-resident, no matter in which town the land may lie, or what may be the rule of valuation or rate of taxation therein, the rate is to be established and the tax assessed and collected by Gilmanton for its exclusive use and benefit.    It would be difficult to find a stronger instance of unequal and extra territorial taxation, and, notwithstanding it has been held in other jurisdictions that occupied lands lying partly in two townships may be taxed together in that in which is the house of the owner, or in which the principal portion is situate (Cool. Tax. 121, note), the constitutionality of the Gilford charter in the respects named might well be questioned.    It is unnecessary, however, to pass upon this question, for there are other grounds which entitle the petitioner Weeks to relief.    One is, that the legislature manifestly intended the provision as to taxation to be temporary and not permanent; that its purpose was to carry out the agreement of the parties (Lancaster's Hist. Gilmanton 122), and adapt the dividing act to the supposed convenience of the existing land-owners whose lands were divided. *Lamprey* v. *Batchelder*, 40 N. H. 528, 529.    The language of the provision supports this view, and there is nothing to indicate sufficiently that its operation was intended to extend to future owners of the divided lots.

Then, again, the taxes against the petitioners were assessed under a law imperatively requiring all real estate to be taxed in the town where it is situate (G. L., c. 54, s. 11), and there has been no change in this respect since the revision of 1842.    Rev. St., c. 40, s. 7; C. S., c. 42, s. 9; G. S., c. 50, s. 11.    Prior to that revision we are aware of no statute expressly requiring real estate to be so taxed, and in the absence of such a requirement it is quite probable that the legislature of 1812 may have understood that it had the power to incorporate into the charter the anomalous provision in question.    But however this may have been, we are of opinion that the provision was intended to be merely temporary in its operation, and if not, that it was repealed by the revision of 1842.

*Petition of Weeks granted.*

*Petition of Mack denied.*

All concurred.