ORRIN A. BILLS et al., Appellants, *v.* THE NATIONAL PARK BANK OF NEW YORK, Respondent.

Under the Code of Procedure (§§ 232–6), a debt evidenced by a negotiable security, owned by and in the hands of an attachment debtor, could be attached by serving the attachment upon the maker of the security.

While the attachment might be defeated by a subsequent transfer of the security to a *bona fide* holder for value, payment thereof by the maker to one, who to his knowledge did not hold it for value or in good faith, but simply for the benefit of the attachment debtor, was no defense to an action to enforce the lien of the attachment.

Prior and up to April 27, 1875, the N. O., St. L. & C. R. R. Co. had a deposit account with defendant; the deposits being made by R., its assistant treasurer, and its principal officer in New York, of whose official position defendant was fully informed; on that day said company having a balance to its credit drew its check for the amount, which was certified by defendant charged to the company and delivered to R. On April 30, 1875, an attachment against said company was served upon defendant by delivery of a copy with proper notice. The check at that time was still in the possession of R., and was owned by the company. On the same day, shortly after the service of the attachment, and after R. had been informed thereof, he opened an account in his individual name, depositing to the credit thereof the said check and other negotiable securities drawn to his order as assistant treasurer, and belonging to said company. R. had no individual account prior to that date, and defendant had reason to and did believe that the securities were the property of the company, and that the deposit was intended to pay its debts; to which purpose it was afterward applied, being drawn out on the individual checks of R. In an action brought after the going into effect of, and pursuant to the provisions of the Code of Civil Procedure (§§ 677, 678), to recover the attached debt. *held,* that the plaintiffs were entitled to recover; that the certification of the check did not absolutely pay and discharge the deposit account, but the debt evidenced by it was liable to attachment ; that the deposit of it by R. in his own name did not vest title in him, and as the debt remained the property of the company, it was properly attached, and the checks having subsequently come to the hands of defendant, it was liable.

As to whether the law in reference to attaching debts evidenced by negotiable securities has been changed by the Code of Civil Procedure (§§ 648, 649), *quære.*

*Bills* v. *Nat. Park Bk.* (15 J. & S. 302), reversed.

(Argued March 21, 1882 ; decided June 6, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made April 7, 1881, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial.    (Reported below, 15 J. & S. 302.)

This action was brought to recover the amount of an alleged indebtedness of defendant on a deposit account of the New Orleans, St. Louis and Chicago Railroad Company, which plaintiff claimed had been attached under a warrant of attachment issued in an action brought by plaintiff Bills against said railroad company.

The material facts are stated in the opinion.

*George H. Adams* for appellants.   The relation between the railroad company and the bank, so far as the deposit account was concerned, was that of debtor and creditor.   (*Thompson* v. *Bank*, 13 J. & S. 17 ; *Espy* v. *Bank*, 18 Wall. 620; *Marine Nat. Bk.* v. *City Bk.*, 59 N. Y. 72; *Thompson* v. *Bank*, 82 id. 1 ; *Brownell* v. *Carnly*, 3 Duer, 9.)   The railroad company could have sued the bank for its deposit.   (*Thurber* v. *Blanck*, 50 N. Y. 86.)   The certification created a relation like that arising from the acceptance of a bill of exchange. (*Espy* v. *Bk. of Cincinnati*, 18 Wall. 604; *Noel* v. *Murray*, 13 N. Y. 168; Byles on Bills, 381–82 ; *Blakely* v. *Jacobson*, 9 Bosw. 140; *Elwood* v. *Diffendorf*, 5 Barb. 400 ; *Porter* v. *Talcott*, 1 Cow. 359 ; *Sheey* v. *Mandeville*, 6 Cranch, 253 ; *Battle* v. *Coit*, 19 Barb. 68 ; *Thompson* v. *Bank*, 82 N. Y. 1, 8.)   The act of the defendant in certifying this check was unlawful, and under the circumstances of this case, of no effect, and void.   (*Merchants' Bk.* v. *State Bk.*, 10 Wall. 604; *Cooke* v. *Bank*, 52 N. Y. 96 ; *Broughton* v. *Salford Works*, 3 B. & A. 1 ; *Leavitt* v. *Palmer*, 3 N. Y. 19.)   An attaching creditor can acquire through his attachment no higher or bet-

ter rights to the property or assets attached than the defendant had when the attachment took place, unless there be fraud or collusion. (Drake on Attachments, §§ 223, 525, 601, 615; *Camp* v. *Clark*, 4 Vt. 387; 1 Dana, 580; 24 Vt. 363; 22 Iowa, 565; 6 N. H. 572; 3 Conn. 27; *Wood* v. *Bodwell*, 12 Pick. 268; *Briggs* v. *Block*, 18 Mo. 281; *Brown* v. *Foster*, 4 Cush. 214.) The defendant must show, in the face of the presumptions attaching to the transaction, an indorsement for delivery, and a delivery. (*Cushman* v. *Haynes*, 30 Pick. 132; *Mayor* v. *Chattahoochee Bk.*, 51 Ga. 325; *Freund* v. *Importers, etc., Bk.*, 12 Hun, 540; *Taacks* v. *Schmidt*, 18 Abb. 307.) The $15,000 draft and the Wilmington draft of $33,000 were subject to the attachment. (*McDaniel* v. *Hughes*, 3 East, 874; 1 Com. Dig., Attachment C., 541; Laws of 1842, chap. 197, § 2; Laws of 1848, chap. 53 [3 Edmunds' R. S. 681], § 2.) The levy was complete and sufficient. *O'Brien* v. *Mech. & T. Ins. Co.*, 56 N. Y. 55, 56; *Wehle* v. *Conner*, 69 id. 552.)

*Francis C. Barlow* for respondent. An attachment only binds money or property in the hands of a third person at the time of its levy. (Old Code, §§ 227–231, 235; *O'Brien* v. *Ins. Co.*, 56 N. Y. 52.) Unless the statute expressly so provides, no effects of the defendant coming into the garnishee's hands, or indebtedness accruing from the garnishee to the defendant, after the garnishment are bound thereby. (Drake on Attachments [5th ed.], §§ 451 a, 451 d.) The certificate provided for by section 236 of the old Code is not in the nature of a plea, nor is any judgment entered against the garnishee. (Old Code, § 236; *O'Brien* v. *Ins. Co.*, 56 N. Y. 60.) Attachments touch only legal titles, and the bank had no right to hold equitable interests under this process. (*Thurber* v. *Blanck*, 50 N. Y. 80; *Castle* v. *Lewis*, 78 id. 137; *Greenleaf* v. *Mumford*, 35 How. 148.) A bank cannot inquire into, or dispute the title of a depositor. (*Sims* v. *Bond*, 5 Barn. & Ad. 389; *Lassell* v. *Cooper*, 5 C. B. 525, 531, 532.) Innocence and right are always to be presumed, especially as to negoti-

able paper. (*City of Lexington* v. *Butler*, 14 Wall. 296; *Bissell* v. *R. R. Co.*, 22 N. Y. 290; *Barnes* v. *Ontario Bk.*, 19 id. 164.) The possibility that Rodney might have held the equitable title, as he certainly did the legal, is enough to protect the bank. (*Magee* v. *Badger*, 34 N. Y. 247, 249.) It is to be presumed that the bank charged the amount of the certified check against the drawer's account. (*First Nat. Bk.* v. *Leach*, 52 N. Y. 352; Drake, *ubi supra*, § 585, p. 498.) A check drawn to the drawer's own order may be negotiated to a third person, and the presumption is that it was procured to be certified for that purpose. (Drake on Attachments [5th ed.], § 585, p. 498.) The plaintiff in a suit can only recover on his right and title as they existed at the beginning of the action. (*Muller* v. *Earle*, 37 Supr. Ct. 388.) Where the interest of the attachment defendant is contingent, it is not liable to attachment. (*Bates* v. *R. R. Co.*, 4 Abb. 72, 73, 82.) The rulings rejecting the check book were correct. (*Huff* v. *Bennett*, 6 N. Y. 337, 339; *Russell* v. *R. R. Co.*, 17 id. 134, 140; *Juniata Bk.* v. *Brown*, 5 Serg. & R. 231; *Smith* v. *Lowe*, 12 id. 87; *Sackett* v. *Spencer*, 29 Barb. 180; *Halsey* v. *Sinsebaugh*, 15 N. Y. 485, 487, 488; *Russell* v. *R. R. Co.*, 17 id. 134, 140.) Because incompetent testimony is admitted, it is not to govern during the progress of the trial. (*Hamilton* v. *R. R. Co.*, 51 N. Y. 100, 106, 107; *Dean* v. *Ætna Ins. Co.*, 2 Hun, 368.) The burden of proof being on the plaintiff, he must show clearly that every deposit actually reached the bank, and that he made them. (*White* v. *Nellis*, 31 N. Y. 405; *Ellis* v. *Railway Co.*, L. R., 9 C. P. 557; *Priest* v. *Nichols*, 116 Mass. 401.) If all the evidence as to some of the deposits being made by other persons was left out, Rodney's testimony would not come within the rule as to memoranda. (Stephens' Digest of the Law of Evidence [2d ed., London, 1876], 34; *Braine* v. *Preece*, 11 M. & W. 773; *Lewis* v. *Kramer*, 3 Md. 265, 287; *Harwood* v. *Mulry*, 8 Gray, 250; *Price* v. *Torrington*, 1 Salk. 285.)

EARL, J. The following among other facts were found by the referee: For more than six months prior to April 30,

1875, the New Orleans, St. Louis and Chicago Railroad Company had had a deposit account with the defendant, the National Park Bank. During all that time John M. C. Rodney was the assistant treasurer of the railroad company, in the city of New York. As such he was the principal officer of the company in that city, and either personally or through his assistants made all the company's deposits in the bank which were made therein, and together with the president of the company he signed all the checks or drafts that were drawn by it against such deposits. The bank during all the time was fully informed of the official position of Rodney, and prior to April 30, 1875, it had never had any dealings with him as a depositor otherwise than in his official and representative character. On the 27th day of April, the bank was indebted to the railroad company on its deposit account in the sum of $6,485.33. On that day the company drew its check upon the bank payable to the order of Rodney, as assistant treasurer, for $6,600, which check the bank then and there certified in writing to be good and then charged the same to the company and delivered it, thus certified, to Rodney. On the 30th day of April, Bills, one of the plaintiffs, commenced an action in the Superior Court of the city of New York, against the railroad company, to recover the sum of upwards of $21,000. On the same day a warrant of attachment was issued in that action, directed to Connor, the other of the plaintiffs, who was then sheriff of the city and county of New York, directing him to attach and safely keep all the property of the railroad company within the city and county of New York; and on that day about half after two o'clock, P. M., he duly served the attachment upon the defendant by delivering a copy thereof, together with a proper notice, to its president, in which notice it was stated that he had attached all the property, debts, credits and effects then in the possession, or under the control of the bank, and that he required it to deliver all notes, books, vouchers, papers, debts, credits, effects, etc., into his custody without delay. The railroad company continued to own the certified check and Rodney continued to be possessed of it

as such assistant treasurer until after the attachment was served on the defendant as stated. On the same day about the close of banking hours, and shortly after the attachment had been served on the bank, and after Rodney had been informed by the bank that the attachment had been served, he individually and in his own behalf opened an account with the bank and then and there deposited to his individual credit therein, and as being his property, the certified check and other negotiable securities drawn to his order as such assistant treasurer and being the property of the railroad company, amounting in the aggregate to upwards of $55,000. Among the securities so deposited by Rodney was one draft or check for $33,000, and another draft or check for $15,000, which had been forwarded to him by the railroad company for the special purpose of paying coupons owing by it falling due the next day, and the proceeds of the checks were applied by Rodney to that purpose. At the time the deposit was made by Rodney to his individual credit, the bank had good reason to believe, and did believe, that the securities so deposited by him were the property of the railroad company, and that he intended to apply the credit which he obtained by the making of the deposit to pay lawful and just debts owing by the company, and he did so apply the same, and soon after making the deposit drew the amount thereof from the bank upon his individual checks upon the bank which were paid by it. Subsequently judgment was recovered against the railroad company in the action commenced by Bills against it, and thereafter upon his application the court granted leave to bring this action against the defendant pursuant to the provisions of sections 677 and 678 of the Code of Civil Procedure.

The question now to be determined is, whether upon the facts so found by the referee, the debt due from the defendant to the railroad company was so attached as to enable the plaintiffs to maintain this action to recover the same. The Code of Procedure which was in force at the time the attachment was issued, and served, in sections 231, 232, 234, 235 and 236, authorized the seizure of all the property of the attachment debtor within the county of the sheriff, as well debts and

credits due him as tangible personal property, and the execution of the attachment upon debts and credits was required to be made by leaving a certified copy of the warrant of attachment with the debtor, with a notice showing the property levied upon. Here there is no question that the attachment was properly served, if there was any debt due from the defendant to the railroad company upon which the sheriff could levy. The bank was indebted to the railroad company when it certified the check. That certification did not absolutely pay and discharge the deposit account. It did so only *sub modo*, in the same way that a debt is paid by the promissory note of the debtor. Notwithstanding the certified check, the railroad company could have returned it and sued upon the deposit account, or without first returning it, could have sued upon the account, surrendering the certified check upon the trial, first, however, demanding payment. But regarding, as we should, the certified check as a negotiable security issued by the bank to the railroad company and payable to any *bona fide* holder thereof who should present the same, yet the debt evidenced by such security was liable to be attached in a suit against the railroad company as its property, and could be attached by service of the attachment upon the bank in the manner in which this attachment was served. It is generally the law in this country under statutes like those which existed in this State, that a debt evidenced by a negotiable security can be attached, and the following rules may be deduced from adjudged cases:

While the negotiable security is held by the attachment debtor it may be attached by the service of an attachment upon the maker, provided the negotiable security is past due.

If the security be not past due at the time the attachment is served, but thereafter remains in the hands of the attachment debtor until it becomes due, then the attachment is effectual.

Where a debt evidenced by a negotiable security is thus attached, the attachment is effectual against everybody except a *bona fide* taker of the security after the attachment. The care and purpose of the courts in such cases is to protect the maker

of the security against double payment, and when that can be accomplished the attachment can be made effective. If the security is not due then there must be proof, that it was in the hands of the attachment debtor when the attachment was served, and in the absence of proof, that will not be presumed; in other words, it must be shown that it was in such a condition as to be liable to the attachment. (See Drake on Attachments, §§ 573–592, where very many authorities are cited and commented on.)  In *Enos* v. *Tuttle* (3 Conn. 27), HOSMER, Ch. J., said: "There exists no doubt that a negotiable note before it has been negotiated may be attached on a demand against the payee, liable to be defeated by the transfer of the note at any time before it falls due." In Iowa and California it has been decided that the maker of a negotiable instrument can be charged as garnishee of the payee after the instrument has become due, provided it is shown to be at the time of the garnishment in the defendant's possession. (*Commissioners, etc.,* v. *Fox,* Morris, 48; *Wilson* v. *Albright,* 2 G. Greene, 125; *Gregory* v. *Higgins,* 10 Cal. 339.) And such is believed to be the rule in most of the States where it is not modified by statute.

Here it is found by the referee that the certified check, at the time the attachment was served, belonged to the attachment debtor, and, in fact, there never was a time prior to the payment of the check by the bank when it did not belong to it. The fact that Rodney took it to the bank, and took credit for it in his own name, did not vest the title of the credit in him. He took credit in his name, upon the undisputed evidence, for the benefit of the company, intending to use the money thus standing to his credit for the benefit of the company, and he in fact did so use it; and it is found by the referee that the bank had good reason to believe, and did believe, when it paid the check subsequently to the attachment, that it belonged to the railroad company, and that Rodney intended to apply the credit which he obtained for the benefit of the company. Thus the debt due from the bank to the railroad company was attached while it was due to the company, and despite the attachment was afterward paid by the bank, in fact, to the rail-

road company.   Upon the facts found it cannot be well claimed that the payment was made in good faith.   It would be a reproach to the administration of justice if such mere legerdemain, such dexterous manipulation could defeat an attachment regularly served.

It has generally been understood to be the law in this State that a debt evidenced by a negotiable security, whether due or not, so long as it is in the hands of the attachment debtor, can be attached by serving the attachment upon the maker of the security.   The attachment may be defeated by a subsequent transfer of the security to a *bona fide* taker, for value, who is in a position to enforce it against the maker.   But before the debt can be enforced against the maker under the attachment, the sheriff must obtain possession of the security so that upon the trial he can surrender it to the maker, or he must show that it has already got into the hands of the maker, or that for some other reason it could not be enforced against the maker by any other person.   Here there is no difficulty, as the certified check is in the hands of the defendant.   If the defendant had not taken it and paid it by giving credit to the treasurer Rodney, it may be that the sheriff, by proper proceedings taken, could have obtained possession of it.   The defendant cannot defend itself now by showing payment of the check to one who to its knowledge did not hold it for value, or in good faith, and who, in fact, held it for the railroad company and for no other purpose.   If the bank had not been a willing party to defeat this attachment it could have suffered no embarrassment.   If it entertained a suspicion or belief that Rodney had no title or claim to the check or the debt evidenced thereby, it could have refused payment to him and, in case of an action commenced therefor by either party, could have interpleaded the other party.   There can be no greater embarrassment to the makers of negotiable securities, in allowing them to be thus attached, than exists in all cases where such securities are lost or stolen, or where there are conflicting claimants to them or disputes about the ownership of them.   The makers have their protection, in case they cannot definitely ascertain to whom payment

can safely be made, by interpleading antagonistic claimants. If negotiable securities can be attached only by service of the attachment upon the attachment debtor, and the actual seizure of the securities while he holds or owns them, then a fraudulent debtor may easily place his creditors at defiance by concealing himself or absenting himself from the State, and although his debtors remain within the jurisdiction of the court, the debts cannot be attached ; or he may, after the attachment has been served upon his debtor, make a fraudulent, sham or merely formal transfer of the securities and thus defeat the attachment.    Such has not, we believe, been generally understood to be the law in this State, and is not now the law, except as it is made so by sections 648 and 649 of the Code of Civil Procedure, the effect of which is not now in question and need not now be determined.

I am, therefore, of the opinion that the plaintiffs, upon the facts appearing, were in a position to maintain this action, and that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except TRACY, J., absent.

Judgment reversed.