Hamilton Cole, Referee.
—“This case was formerly tried under the name of Bills v. National Park Bank. The complaint was dismissed, and the judgment entered thereon, was affirmed by the general term of this court (47 Super. Ct. 302). The court of appeals reversed this judgment and ordered a new trial (89 N. Y. 343). An assignment was. made of the cause of action to the present plaintiff Gibson, and he has been substituted as a party herein.
“ The evidence in the case, as it now stands, does not-substantially differ from that given upon the former trial, and a full statement of the case is given in the opinion of the court of appeals.
“An objection, which lies at the foundation of the attachment proceedings is now first raised by the defendant. The copy of the warrant and notice which were served upon the bank in this case -were signed by the names of the sheriff, and his deputy, but their names were written by one Sweeney, a clerk employed in the sheriff’s office. The defendant now claims that no proper service of the attachment in this case was ever made upon the bank, and that the papers which were served were of no force and effect, because they were not signed by the sheriff personally.
“ It is settled that authority to do acts merely ministerial or mechanical may be delegated,, but not so where the act involves the exercise of judgment or discretion (Powell v. Tuttle, 3 N. Y. 396; People v. Davis, 15 Hun, 209).
“The president, or the governor of a state, cannot delegate authority to sign a law. This requires the exercise of judgment. The judge issuing the attachment in. this case could not delegate his power ; but the act of the .sheriff, in certifying a copy of the warrant and in making the notice-provided for by law, required the exercise of no judgment or discretion ; it was ministerial simply. It is true that a special statutory authority, under which a party may be deprived of title to his property, must be strictly followed;. but this does not mean that every step in the process, whether requiring the exercise of judgment or not, must be-personally performed by those who are named to carry out *431 the purposes of the act, unless it is expressly so provided. The initial step here is the' warrant of attachment. The power to issue this cannot be delegated, but the power to certify a copy and make a notice, is within the general authority of the sheriff, is ministerial in its nature, and can as well be delegated as the power to serve them after they are made.
“ Coming now to the merits: if the present case is brought directly under the decision of our highest court, nothing remains for the referee, save to follow that decision. It is claimed by the defendant that this decision depends upon the fact found upon the former trial, that at the time the securities were deposited by Rodney, the bank had reason to believe and did believe that the same weré the property of the railroad company, and that such fact is not established by the evidence in this case. The plaintiffs insist that such fact is established, and, if not, that its existence is not essential to a recovery herein. It does not appear in the opinion of the court of appeals that the existence of such knowledge on the part of the bank is essential to the plaintiffs’ recovery, and yet the existence of such fact is prominently put forward in the discussion of the case and decidedly colors the opinion.
“It is said in Duncan v. Berlin (60 N. Y. 151), 1 Where a balance due a depositor in a bauk is levied on by virtue of an attachment against the depositor, the bank is not authorized to deduct an outstanding check given by the depositor to a third person, which had not, prior to the levy of the attachment, been presented and accepted.’ In the case at bar the check had been presented .and accepted prior.to the levy of the attachment. The court of appeals say that the issuance of this certified check did not pay the debt to the railroad company ; that, it was a negotiable security issued to the railroad company and payable to any bona fide holder who should present the same, yet that the debt evidenced by it wás liable to be attached, so long as the negotiable security was in the hands of the attachment debtor, by serving the attachment upon the maker of the security, *432 but that such attachment might be defeated by a subsequent transfer, of the security to a bona fide taker for value, who is in a position to enforce it against‘the maker. Now it would seem from these principles, that where a bank had certified a check and an attachment against the maker of the.check had been served upon the bank, that the right of the bank to pay the check to any person subsequently presenting the same would depend upon that person being a bona fide holder for value. The court do not consider the question as to whether, in the absence of any suspicious circumstances, the bank is authorized to consider any one presenting such a check a bona fide holder for value. That question did not arise in this case. If the ordinary rule be applied in favor of the bank as to the rights of holders of negotiable paper, that ‘ they are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to their diligenceor negligence,’ then the practical result would be that the bank could not be lield in this case in the absence of such suspicious circumstances as should put it on its guard, and a disregard of which would justify the imputation of bad faith on its part.
“ But it may be that the bank is in this position. It does not claim the fund deposited. It is indebted to the depositor to a certain amount for which it has certified a check. It is bound to pay this amount to the bona fide holder of the check. Before the check is presented for payment an attachment against the- depositor is served upon the bank. This .attachment reaches the debt due by the bank to the •depositor, but the attachment is defeated if the check either before or after the service of the attachment has reached the hands of a bona fide holder for value. The check is presented for payment. The bank has notice that two persons claim the amount deposited—the attachment creditor and the holder of the check. The right of the latter to be paid depends upon his being a bona fide holder for value, and it may be that in all such cases the bank must inter-plead the two claimants, or else pay the check at the risk *433 of being compelled to again pay the attaching creditor, if it be found that the person receiving payment was not in fact a bona fide holder for value of the check.
“ Now what were the circumstances surrounding this transaction within the knowledge of the bank. Rodney was known to the officers of the bank as the assistant treasurer of the railroad company, and all previous transactions on his part with the bank had been on behalf of the railroad company. The check of $6,600 had been drawn by Rodney as assistant treasurer, to the order of himself as assistant treasurer, had been presented, by him to the bank for certification, had been certified, and by Rodney taken away from the bank April 27, 1875. The bank knew that the railroad company were anticipating an attachment. ' As early as November, 1874, a suit had been brought by one of the attorneys of the plaintiffs in this action and an attachment had been levied upon the: railroad company’s deposits in the defendant’s possession. Therefore the president of the railroad company made an arrangement with the bank that it would allow the railroad company to overdraw its account in the early part of each month when its coupons fell due, and this arrangement had been carried on for several months. It had been acted upon in the early party of April, 1875. On April 27, 1875, there was a deposit to the credit of the railroad company of $6,485.33. A check is certified drawn as before stated for $6,600. On April 30 the attachment in this case is served upon the bank. On the next day, as it now appears, Rodney comes to the bank, is informed of the attachment served the day before, and then presents the certified deck of April 27, together with some other securities belonging to the railroad company, opens an account in his own name and proceeds to draw checks upon the same for and on behalf of the railroad company, which are paid by the bank. Under such circumstances I cannot doubt but that the bank had reasonable cause to believe, and did believe, that the funds deposited were the property of the railroad company, and that the transaction took the shape it did *434 to avoid expected attachments. The bank knew the facts. It was mistaken in supposing that an attachment against the railroad company could be' avoided by the method adopted.
“On May 1, 1875, Eodney deposited, together with this certified check of $6,600," other securities to a large amount belonging to the railroad company, and the question is now raised whether these additional amounts are reached by this attachment. In other words, does the attachment reach property belonging to the railroad company and acquired by the bank subsequently to the serving of the attachment upon it % There is a dearth of authority upon this point. In Patterson v. Perry, 10 Abb. Pr. 82, it is stated that only property on hand at the time of the service of the notice is affected, and "this, I think is clearly so from the provisions of the Code itself. The provisions of the old Code govern this case. Section 235 provides for the execucution of the warrant where the property levied on is incapable of manual delivery : “ The execution of the attachment upon such property shall be made by leaving a certified copy of the warrant of attachment. . . . with a ■notice showing the property levied on.” What kind of notice is required has been the subject of much discussion ; but, whatever notice is necessary, it can only speak at the timé of its service. The Code assumes the immediate' taking into possession by the sheriff of certain kinds of property, and the immediate obtaining of a certificate in cenain other cases. In néither case could this be done except as to property then in possession. The attachment clearly, I think, speaks from the time of its service, and has no effect as to property absolutely acquired. The old Code provides that the warrant shall require the sheriff “ to attach and safely keep all the property of such defendant within his county.” The new Code adds, “or which he may have at any time before final judgment.”.
“The old Code made no provision for successive levies. The new Code provides that the sheriff “may levy from time to time, and as often as is necessary, &c.”
Holmes & Adams, for plaintiffs.
—I. The additional securities deposited with the certified check of $6,600 on May 1,1875, were subject to the attachment, being the property of the railway company. Attachments all have their origin in the custom of London (Drake Attachments, § 1). Our statutes attempting to make no definition of the words, “ the sheriff shall attach,” “property shall be liable to be attached in actions at law,” we must look for the meaning in the law from which the proceeding was derived, and which the legislature had in view when it used the words.
“If the property of defendant below be found to have come into the hands of the garnishee before plea pleaded (i. e., pleaded by garnishee), it is liable to be attached by the custom.” This means, from the context and from the facts of that case, if goods come to garnishee after attachment served, and before garnishee has pleaded to the warrant, the attachment so served shall bind them (1 Com. Dig. Attachment, C. P. 541; Privilegia Londini [Bohun], to be found in appendix to Sargeant Attachment, 203; McDaniel v. Hughes, 3 East, 874; McGrath v. Hardy, 4 Bing N. C. 785. Our practice requires the garnishee to give the sheriff a certificate stating the property, etc. This is nothing but the old garnishee’s plea in another form ; it *436 was clearly intended to take its place, and to be effectual for some purpose. It gives the garnishee opportunity to look about him and determine'as to the rights of parties, and purports, in its terms, to state the facts, not of the time the attachment was served, but of the time since then, and up to the time when the certificate is made and delivered.
*435 “Under either Code that property only is reached by the attachment which is on hand at the time of the levy. The levy is perfected by the service of the warrant and notice. Thé certificate required in case of property incapable of manual delivery, is a certificate of the property on hand when the levy is made. It forms no part of the levy itself, and in no way operates to extend the effect of the service of the warrant and notice.*
“ The plaintiffs are entitled to judgment against the Park Bank for the amount due by it to the railroad company on April SO, 1875, when the attachment "in this case was served.”
*436 A consideration of the various attachment laws of this state, from act of 1801, March 21, including the Revised Statutes and the Code of Procedure, sustain this contention.
The language of the Code and Revised Statutes seems to imply that the certificate should speak of the time of its presentation to the sheriff (Code, 236; Laws 1842, ch. 197, § 3; Laws 1848, ch. 53 [3 Edm. R. S. 681], amending ch. 197 of Laws 1842, and prescribes [§ 2] that provisions of R. S. apply, viz., §§ 12-16, art. 8, tit. I., ch. V., Part II. of R. S.).
The notice and the attachment must then be available against property held by bank at time of attachment served, or at any time after up to the making of the.certificate, i. e., “ to plea pleaded.”
In view of the R. S., the law has never regarded this as a hardship, because publication under the Revised Statutes produced the same effect as is now claimed for notice and certificate ; and the custom upon which all attachment laws are founded had the same effect. In other States the question has been passed upon Glen v. Besler, &c. Co. (7 Md. 287, 296). “It has been the general practice under an attachment system under the authority of the 5th and 6th sections of the Act of 1795, chapter 56, (Maryland Statutes), to condemn all credits or property in the hands of the garnishee for the debtor at the time of the trial.” Between the levy and trial in this case the garnishee had come into possession of property of attachment defendant (291 and 296). Act of Md. 1795, ch. 56, § 6, provides for capias ad res against garnishee if he threatens to abscond. Section 5- provides simply that in all cases of attachment plaintiff may interrogate garnishee, “ Who shall by rule of court answer each and every of the interrogations aforesaid, touching or concerning the property of the defendant in *437 his possession or charge, or by him due or owing at the time of serving such writ of attachment, or at any other time, and if such garnishee shall neglect,” &c. Dunegan v. Byers (17 Ark. 492-496), was under statute similar to Maryland providing for interrogatories and answers by garnishee as to indebtedness, &c. ‘1 At the time of service of a writ or any time thereafterheld to reach after acquired property. The trustee can be charged for property coming to his hands prior to “ disclosure,” i. <?., to answer made (Gretchel v. Chase, 17 N. H. 106-109). Slints v. Hobensack, 20 Pa. St. 412), expressly holds that property coming to hands of garnishee after attachment and before answer, is bound, citing custom of London; Sargeant on Attachment, and cases in the reports of Pennsylvania.
The certificate was not given by the bank to the sheriff at the time of the service of the Warrant, but on May 8, 1875. .
II. The point that as the statute requires the sheriff to certify the copy warrant, the signature of the sheriff to such certificate signed by his deputy, or the clerk of the deputy, by the latter’s direction, is not in compliance with the statute, cannot be maintained (Lynch v. Livingston, 6 N. Y. 422, 431, and cases there cited).
' See as an illustration also Code of Procedure, § 128 : “The summons shall be subscribed by the plaintiff or his attorney,” &c. Code of Civ. Proc. § 417 : “It (the summons) must be subscribed by the plaintiff’s attorney, who must add to his signature,” &c. It has always been held that the signature need not be the real signature of the attor-. ney ; it may be printed (1 Bliss Code, notes to said section).
Barlow & Olney, for defendant.
—I. There was no legal attachment. The copy of the warrant must be.certified, and the “notice” signed by the sheriff (Code Proc. § 235). Even if “ deputy sheriffs” are legally qualified officers, here, the copy of the warrant was not “certified” by a deputy *438 sheriff, nor was the “ notice'” signed by a deputy. Both were in the handwriting of a clerk in the employ of the deputy. The question is, whether a public officer can delegate the power of making official signatures. There is no difference between the signature of the president or the governor to a law or to death-warrant, and the signature of a sheriff or his deputy to a “ notice” (See Blackwell Tax Titles [4th ed.] 380).
In a case where the property of a citizen is. taken from him by process in invitum, the statute must be pursued with the utmost strictness (See Blackwell Tax Titles [4th ed.] 37, 38, 51, 52, 63, 64; Cruger v. Dougherty, 43 N. Y. 107; Curtiss v. Leavitt, 15 Id. 250; Sharp v. Spier, 4 Hill, 76; Spear v. Ditty, 9 Verm. 283). Where the signature of a public officer is required, he must make it himself (Chapman v. Inhabitants, 56 Maine, 390; Blackwell Tax Titles [4th Ed.] 379; Hannel v. Smith, 15 Ohio, 134).
II.. The court of appeals in the former decision herein (89 N. Y. 343) went wholly upon the findings of the referee, that the bank “had good reason to believe and did believe, that the securities deposited by Rodney were the property of the railroad company.” If the bank actually knew or believed, that this was a mere cover and device, and that Rodney had no interest in the paper, it is undeniable that it would not be protected. But the finding of the referee that the defendant, at the time when Rodney deposited the certified check of $6,600 to his own credit, “ did believe” that it was the property of the railroad company (as distinguished from the finding that the defendant '•'•had reason” so to believe), is not warranted by the evidence.
The authorities hold that “having reason to believe ”—■ that is, the existence of suspicious circumstances, or even “ gross negligence,” is not enough to affect the bona fldes of the holder of paper, and this, however the question arises. If the bank.had discounted the paper for Rodney, the rule would apply. So when Rodney deposited it, the bank became the owner, and be became a mere creditor. The following cases hold that suspicions, or even gross *439 negligence, do not affect the title of the holder of paper (Magee v. Badger, 34 N. Y. 249). “ The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence.” And “he is not bound to be on the alert for circumstances which might possible excite the suspicions of wary vigilance” (Lord v. Wilkinson, 56 Barb. 593; where the party had once actually known the fact but had forgotten it; Insurance Co. v. Hachfield, 73 N. Y. 228; Bank v. Noxon, 45 Id. 762-765; Welch v. Sage, 47 Id. 143, and at 147, where it is said that it is the duty of the court to direct a verdict unless the jury can find “fraud or bad faith ;” Farrell v. Lovett, 68 Maine, 326, where all the authorities are considered; Hotchkiss v. National Bank, 21 Wall, 354; Murray v. Lardner, 2 Wall. 110-121; 2 Parsons Notes and Bills [2d Ed.] pp. 269 and 279).
III. The legal title to the paper deposited by Rodney, and to its proceeds, was in him individually, and even if the equitable title, the real ownership, were in the railroad company, yet, attachments hold only legal titles, and the Park Bank had no right to hold equitable interests or titles under this process (Thurber v. Blanck, 50 N. Y. 80; Greenleaf v. Mumford, 35 How. 148). That a bank cannot inquire into, or dispute the title of a depositor, has been long settled (Sims v. Bond, 5 Barn. & Adol. 389; Tassell v. Cooper, 5 C. B. 525).
IV. An attachment only binds money or property in the hands of a third person (here the bank) at the time of its levy. Whatever the rule may be in what is known as “garnishment,” or “trustee process,” it is obvious that there is no analogy between the plea or answer in such proceedings, and the certificate provided for by § 236 of the old Code. The certificate is merely the giving of information as to the property held, and in contemplation of law it precedes the attachment, and is asked for in order to enable the property in the hands of the garnishee to be properly described (Code of Pro. § 236; O’Brien v. Ins. Co., 56 N. Y. 60). In short, the certificate has no part in the levy, but the *440 attachment is effective, although no certificate is given or asked for.
Per Curiam.
—Upon a careful consideration of the whole case it appears that all the facts found are fully warranted by the evidence, and that, upon those facts, the referee, under the decision of the court of appeals in 89 N. Y. 343, was bound to render a judgment for the plaintiffs in the amount he did. The additional questions raised by the defendant for the first time since the decision of the court of appeals referred to, were properly disposed of by the referee.
As to the disallowance of that part of plaintiff’s claim which the referee rejected, the reasons assigned by him for the ruling made, seem to be well founded.
The judgment should be affirmed upon the opinion of the learned referee, without costs to either party upon this appeal. °

 The certificate in this case was not served until May 8,1875.—Reporters.