By the Court.—Sedgwick, Ch. J.
The following facts appeared in testimony. The defendants, through one of their firm, bqugh't in Washington, of one Strasburger, his *148 stock of goods for cash, about January 10, 1882. The '’agreement implied was that in part payment of the cash, he should give to Strasburger, the defendants’ check on a bank in New York, for $3,500. For the purpose of drawing such a check, Strasburger handed to him a blank check on a Washington bank. He struck out the name of the bank, but intentionally omitted to write in the name of defendants’ bank. And also intentionally, instead of the true date of the bargain, he wrote, December 10, 1882. Strasburger did not perceive these things at first, but shortly after the defendant’s- departure from the place noticed that the bank had not been named, but noticed that only. Strasburger sent the check by a messenger to the defendant before he left town, and the defendant wrote in the name of the bank—“ The Ninth National Bank,”—but intentionally took the opportunity to strike from the check the words “ to order.” The defendant, at the time of giving the check in the first instance, had arranged with the attorney of Strasburger, that the latter should the next morning, call at defendant’s store in New York and obtain, in place of the check given, a regular check of defendants. The attorney went on the car to New York the same day. The plaintiff, his stepson, met him on his arrival and went with him to the hotel where he stopped. There he. asked the plaintiff to give him the plaintiff’s check for the check in question. The plaintiff did not know for what purpose the attorney wanted the check, nor did he ask him. The attorney as a witness explained that his object was to get money as early as possible the next morning, for the purpose of paying certain creditors of Strasburger, who was in a failing or actually insolvent condition. On the morning of the 11th January, one of the defendants went to the bank, and, according to his testimony: “I asked them, if this check were presented, they should come down and bring the checks and I would give regular checks, as they agreed in Washington, that they would take.” On the same morning,, the plaintiff went to defendant’s bank and asked that the check in *149 question be certified. The cashier said that he was not familiar enough with the signature, and also because the name of the bank was written above an erasure, he would not certify it, but that plaintiff should go down to defendants’ office, and if they wanted it paid, they would send a messenger and -then the bank would pay it. The plaintiff told Strasburger’s attorney of this and the two went to defendant’s office. As to what was then done, one of the defendants testified that the two came in. The attorney, and not the plaintiff was in possession of the check. The attorney said he had been to the bank and they did not know him up there, and had told him he had better get another check. The defendant took the check in question and directed his clerk to draw a check for the same amount to the order of Strasburger. The attorney took this check and was going out. Before he turned back the defendant tore off the signature to the check in this action. Then, the attorney said, “ I want this check made out to my order as attorney for Strasburger. I have not any time to lose, and if you don’t do that I shall have to send the check to Washington and have to stay here until I get the money.” The defendant answered that he supposed he would have to do that. The attorney asked the defendant to give him back the other check, because the signatures were torn off. The attorney then went out and in about an hour returned and said “some one by the name of Casper owned that check.” The plaintiff, Mr. Casper, was not there at the time. That was the first time, the attorney mentioned the name of plaintiff in connection with that check. The plaintiff and his witnesses thoroughly contradicted the testimony given by the defendant who was a witness. But, as the case was taken from the jury, the most favorable construction of the whole evidence is due to the defendants.
The same day or the next, certain parties in an action against Strasburger, procured an order of attachment against his property. The deputy sheriff served on the defendants a copy of the attachment. He swore he did not *150 take the.check into his possession but he saw the check at defendants’ office and told one of them to keep it for him.
This action is for a conversion of the check, from which the defendants tore off the signature.
One of the defenses is, “ that the check referred to in the said complaint, prior to the commencement of this action, belonged to one Hart L. Strasburger of Washington, and that the same was delivered to the defendants, by the attorney of the said Strasburger, and in lieu thereof, the said defendants delivered to said attorney another check of like amount, which check has never been returned to said defendants.” It will be observed that the tendency, of defendant’s testimony is to support this defense.
A second defense is, that Strasburger, being the owner of said check and claiming to be entitled to the amount thereof, was at the time of the alleged conversion, indebted to various parties for goods sold, in amounts alleged in the answer, and in all more than $3,500, that actions were commenced by said parties in this state, and that in them, orders of attachment of the property of Strasburger were ‘ duly made, and under them, the sheriff did attach and levy upon all property of Strasburger in the possession of these defendants, including any check given to said Strasburger or the plaintiff, his agent, and the moneys, if any due and owing thereunder.
<> Some of the objections to the plaintiff’s recovery in this case depended upon the check in question not being a negotiable instrument, one of the defendants having stricken from the check the words “ or order.” The defendant, who was a witness, swore that the paper being in his possession for another purpose, he struck these words out. He did so tortiously and could not by such an act without the agreement of the other party change the- character of the chose in action. Ho further attention need be given to this.
Before the Code of Civil Procedure it was the law, that “a debt evidenced by a negotiable security, whether due or not, so long as it is in the hands of the attachment debtor, can be attached by serving the attachment upon the maker *151 of the security” (Bills v. National Park Bank of N. Y., 89 N. Y. 343).
Under the Code Civ. Pro. § 648, the attachment may be levied upon a cause of action arising upon contract including a promissory note or other instrument for the payment of money only, négotiable or otherwise, whether past due or yet to become due, and by section 649 this levy'must be made upon an instrument for the payment of money, by taking the same into the sheriff’s “actual custody.”
If Strasburger were plaintiff it would become essential to the defense to establish that the check, alleged to have been converted, had been taken into the actual custody of the sheriff. In this case the first defense is, that the check in this action had been delivered by Strasburger to the defendants and in lieu thereof another check was given, and the testimony shows that the defendants immediately destroyed the character of the check delivered to them by fearing off the signature, showing that they assumed they were the owners of that check and entitled to do that act. The check ceased to be a chose in action belonging to Strasburger and became a piece of paper belonging to the defendants. It was, of course, on this defense true, that the sheriff did not levy upon any debt due by defendants to Strasburger. If there were no levy the defense falls. The defendants would not have been in danger of paying a debt twice, for on the basis of their defense, the sheriff or the plaintiff in the attachment could not recover on the destroyed or satisfied check, nor on the original indebtedness or the second check, until the latter had been taken by levy.
To make the semblance of a defense, it would be necessary for the defendants to admit, that their contrivance had failed and that Strasburger through his attorney did not deliver the check to them, but that through their failure to destroy the check competently as against Strasburger the check maintained its character as an evidence of debt due by them that was levied upon, and that they did convert it, but that the levy was a defense. Such a defense would *152 fail, if it appealed that the plaintiff and not Strasburger owned the check. There was no question for the. jury, as to whether the plaintiff had paid $3,500 for the check. The evidence was abundant as to that, not only from the plaintiff but from Strasburger’s attorney, corroborated by strong circumstances. If it be admitted that there were suspicious circumstances, so far as Strasburger or his attorney’s action was concerned, there was no attempt to prove that plaintiff had any notice, that the transfer of the check to him, was made for any fraudulent purpose. But I do not perceive that'there were any facts that tended to establish any fraud upon the part of Strasburger or his attorney. The only possible fraud would be, that Strasburger did not intend to devote the proceeds of the check to payment of creditors ; but there was no attempt to prove this, except by asking the attorney what he did with the proceeds of the check given by plaintiff. This was overruled, as to what he did, but he testified that he had been instructed to pay it to one of the creditors of Strasburger.
If the intention of Strasburger and the attorney, had been to thwart a surmised purpose of the defendants, to prevent Strasburger devoting the proceeds of the check to paying one set of debts rather than the one favored by the defendants, it was not fraudulent. Nor would it be fraudulent to thwart a purpose on the part of creditors, to levy upon property, if the disposition in fact of the property were not otherwise fraudulent.
The judgment should be affirmed, with costs.
O’ Gorman, J., concurred.